# IN THE COURT OF APPEALS OF IOWA

No. 18-0614
Filed August 1, 2018

**IN THE INTEREST OF W.B.,**
**Minor Child,**

**D.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, born in 2008. She contends (1) the record lacks clear and convincing evidence to support a finding the child could not be returned to her custody; (2) termination was not in the child's best interests; (3) termination was inappropriate, given the child's preferences and objection to termination and the closeness of the parent-child bond; and (4) the court should have placed the child in a guardianship in lieu of terminating her parental rights.

## I.  *Ground for Termination*

Iowa Code section 232.116(1)(f) (2017) requires proof of several elements, including proof the child cannot be returned to the parent's custody. The department of human services became involved with the family after the child's father assaulted the child's mother. The district court adjudicated the child in need of assistance, removed him from the father's custody, and allowed him to remain in the mother's custody. The mother actively participated in reunification services and abided by a no-contact order prohibiting interaction with the father.

In time, the mother's progress waned. She was unsuccessfully discharged from a substance abuse treatment program, exposed herself and the child to dangerous men, violated the no-contact order, and threatened to assault a department employee. The district court placed temporary legal custody of the child with his paternal aunt, under department supervision. The aunt kept the child briefly but asked to end the placement due to the mother's behaviors towards her. The child was placed in foster care.

Meanwhile, the mother again began working towards reunification. The department recommended returning the child to her custody, subject to department supervision. The district court granted the request.

The reunification was short-lived. The mother violated the no-contact order and assaulted the father. The department asked to have the child removed from her custody. The district court granted the request.

The State filed a petition to terminate the mother's parental rights. The district court granted the petition.[1] The court provided the following reasoning:

> The Mother . . . struggles with homelessness, instability, mental health, deceit, inappropriate conversations around [the child], inappropriate situations with [the child], violence, criminality, domestic violence and ongoing violations of the No Contact Order[, which] prevent [the child] returning to her custody.

On appeal, the mother argues the child wanted to be returned to her care, she requested return of the child to her care, and she was in the process of obtaining housing to facilitate that goal. In her view, the child could have been returned to her custody in the imminent future. On our de novo review of the record, we disagree.

The district court afforded the mother several opportunities to retain or regain custody of her child, and the mother squandered those opportunities. The child-in-need-of-assistance petition was filed in 2015. The district court allowed the child to remain with the mother until her actions precipitated a removal in 2016. Despite her violation of the no-contact order, the court reunified mother and child in the same year. The mother again violated the no-contact order. The court

---

[1] The father's parental rights were also terminated.

removed the child a second time, and the child remained out of her custody for well over a year. In short, the child was shuttled in and out of multiple homes as a direct consequence of the mother's actions.

By the time of the termination hearing, the service provider who most recently supervised visits between mother and child testified the visits were suspended two months earlier "pending the review of the family and updated family interaction plan." While he described interactions between the mother and child as "comfortable," he also stated topics of conversation were "red flags." The main area of concern was the mother's "bringing up court and talking a lot about court." In his view, her statement that the child needed to stand up for himself in court and "come home . . . halted the visitations." Although a previous service provider had a more benign view of the mother's conversations with her child, that service provider was removed from the case several months before the termination hearing.

We are less concerned about the mother's discussion of court proceedings with the child than we are with the mother's failure to address factors precipitating the child's second removal from her home. The mother admitted she violated a no-contact order and also admitted she discontinued therapy that might have helped her process her fraught relationship with the child's father. While she expressed an intent to reinitiate therapy sessions, she had yet to do so at the time of a second termination hearing. The therapy sessions were all the more critical because the mother stopped taking medication to manage her mental health diagnoses after learning she was pregnant and after being told the medications could have adverse "effects on a new unborn child."

At the time of the second termination hearing, the mother also lacked appropriate housing. While she testified she was in the process of obtaining subsidized housing, her efforts on this and other fronts came too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). After more than two years of services, she was simply not in a position to have the child returned to her custody. We agree with the district court that the State proved the statutory ground for termination set forth in Iowa Code section 232.116(1)(f).

## II.     *Best Interests*

Termination must serve the child's best interests. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). In considering those best interests, the child's safety is our primary concern. *Id.*

The department employee overseeing the case had no reservations about the bond between mother and child. She testified "[t]hey communicate well" and "[t]hey interact during visits." Nonetheless, she stated the mother struggled "to set good boundaries for herself" and "to understand what she says and does and how that impacts [the child]." She acknowledged the mother was appropriately prepared for visits and displayed appropriate parenting techniques during the supervised sessions. But she had concerns about the mother's ability to protect the child from domestic violence and ability to manage her mental health.

The service provider who supervised visits shortly before the termination hearing had similar views. He acknowledged a "clear affection" between mother and child but testified to the mother's "inappropriate" preoccupation with the father. He also cited her refusal to attend "any sort of therapy."

We do not minimize the child's strong desire to return to a permanent, loving home with his mother after several temporary placements.  But there is simply no assurance that the mother's home—if one could be obtained—would be permanent or safe.  We agree with the district court that termination of the mother's parental rights was in the child's best interests.

### III.	Exceptions to Termination

The court may consider certain statutory "exceptions to termination."  *See* Iowa Code § 232.116(3).  The mother argues two exceptions apply: "The child is over ten years of age and objects to the termination" and "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  *Id.* § 232.116(3)(b), (c). The factors are permissive, not mandatory.  *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018).  The first exception is technically inapplicable because the child was not over the age of ten at the time of the termination hearing.[2]  As for the second exception, we agree the record contains extensive evidence of the bond shared by mother and child.  But, as discussed, the safety of the child was paramount, and we are not convinced the mother was in a position to ensure the child's safety.

### IV.	Guardianship

A court may place the child with a relative or other suitable person.  Iowa Code § 232.117(3)(c); *A.S.*, 906 N.W.2d at 477.  "[A] guardianship is not a legally preferable alternative to termination."  *A.S.*, 906 N.W.2d at 477 (citing *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).

---

[2] As noted, we have considered the child's preference in the best-interests analysis, notwithstanding the inapplicability of the statutory exception.

The primary factor that augurs in favor of a guardianship is the child's desire to reunite with his mother. The department caseworker conceded the child "would like to be with mom number one." But she recommended against the creation of a guardianship, stating "we have had two years under our belt of a long struggle and a lot of ups and downs for [the child,] and . . . permanency now and an immediate permanency plan is vital for [the child]."

We concur in this assessment. As difficult as severance of the parent-child ties might be for the child, there is simply no assurance the "ups and downs" referenced by the caseworker would subside if a guardianship were created in lieu of termination. We conclude the district court appropriately declined to exercise this option.

We affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**